## J. C. KEEVIL, *et al.*, v. J. V. DONALDSON.

ASSIGNMENT FOR BENEFIT OF CREDITORS; *Hindering and Delaying Creditors.* A deed of assignment was made by a firm whose liabilities were $596.41, and whose assets were $614.18, to an assignee in trust for the creditors, which deed contained the following special clause, viz.: "The assignee shall take possession of the property transferred to him, sell and dispose of the same with all reasonable diligence, either at public or private sale, for the best prices that can be obtained therefor, and convert the same into money, *unless the indebtedness of the firm can be paid or settled otherwise by amicable arrangement between the creditors of the firm,*" etc., "and out of the proceeds of such sale, *if any be made,*" etc. *Held,* That the deed of assignment was void.

### *Error from Linn District Court.*

ON the 10th of July 1876, *Keevil & Turner* brought their action against McComb & Duncan, before a justice of the peace, and subsequently recovered a judgment therein for $279.10, and costs. Upon proper proceedings and process

duly had and obtained in such action, *J. V. Donaldson* was duly summoned on the 11th of said July, as garnishee of said McComb & Duncan. *Donaldson* appeared and answered, denying that he was indebted to, or had in his possession or under his control any property belonging to defendants, McComb & Duncan, except such property as he held under a deed of assignment made to him by McComb & Duncan July 8th 1876; that such deed of assignment was made to him for the benefit of the creditors of said McComb & Duncan, and that he (Donaldson) had taken possession of all the assigned property, and still held the same as such assignee; that the assigned property consisted of bedsteads, chairs, coffins, mirrors, tables, window shades, lumber, trimmings, certain book accounts, and other articles—the total value of the assigned property being about $614. The garnishee's answer being unsatisfactory to *Keevil & Turner*, plaintiffs, they demanded a trial of the truth thereof, contending that the "deed of assignment" of July 8th, was fraudulent and void. Upon such trial the justice found that *Donaldson* was liable and garnishee. From this decision, *Donaldson* appealed to the district court, and a retrial was had at November Term 1876. The district court held that the deed of assignment was valid, and gave judgment in favor of *Donaldson*, garnishee, and against *Keevil & Turner*, for costs. *Keevil & Turner* appeal, and now bring the case here on error.

*Sheffield & Kelley*, for plaintiffs in error.

*J. S. Bentley*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The question at issue is, whether the assignment of Joseph McComb and E. F. Duncan, of the firm of "McComb & Duncan," to the defendant in error, in trust for the creditors of the said firm, is valid. If valid, the judgment of the court below must be affirmed; if void, the judgment must be reversed. The first and leading objection

to the assignment is, that the special clauses in the instrument, to the effect that the assignee shall take possession of the property transferred to him, sell and dispose of the same with all reasonable diligence, either at public or private sale, for the best prices that can be obtained therefor, and to convert the same into money, "*unless the indebtedness of the said Joseph McComb and E. F. Duncan, partners as aforesaid, can be paid or settled otherwise by amicable arrangements between creditors of the said McComb & Duncan,*" etc., * * * "*and out of the proceeds of such sale, if any be made,*" etc., render the assignment void.    The difficulty in the case arises from the doubts of the purpose of the insertion of these special provisions, and their proper interpretation.    But an examination of all the instrument, and the facts developed upon the trial, *aliunde* the instrument, that the total indebtedness of the firm at the date of the assignment was only $596.41, and the amount and value of the assets of the firm was $614.18, lead us to the conclusion that there was an *intention* in executing the deed to hinder and delay the creditors; that this intent was *actually* entertained by the debtors, and not only that there was such *actual* intent, but that such intent was a *fraudulent* one.    It appears to us, that it was anticipated by the making of the assignment, that the creditors would be forced into some compromise or settlement of their claims, and that when the assignment had accomplished its purpose of releasing the firm from the immediate payment of their debts, or had resulted in having the creditors take the property and effects in satisfaction of their claims by "*amicable arrangement*" between themselves, it was expected the mission of the deed would be accomplished.    In such an event, there was to be no sale, and indeed nothing further for the assignee to do.    The assignment was to have effect if no "amicable arrangements" between the creditors could be made; if such arrangements were made, then there was to be an immediate end of the assignment.    The laws of the state in relation to assignments were to be disregarded, and the estate closed up by the creditors, either with the assignors, or

assignee, regardless of the express provisions of the statutes. It was a plan to tie up the property to induce a settlement with creditors.  A power to assignees to compound with all or any of the creditors, in such manner and upon such terms as they should deem proper, was regarded in a leading case in New York as peculiarly objectionable, and one that it was impossible to sustain. *Wakeman v. Grover*, 4 Paige, 247, same case on appeal, as *Grover v. Wakeman*, 11 Wend. 187.  In Illinois, a clause in a general assignment, authorizing the trustee to compound with the creditors, renders it void. *Hudson v. Maze*, 4 Ill. 578.  If it was intended in any way by these special provisions in the deed of assignment, to reserve to the assignors any power or control over the property assigned by it, in the event of an amicable arrangement among the creditors, their effect is equally fatal.  Powers of this kind "poison it throughout."  Counsel for the defendant in error, fearing the construction which may be given to these special clauses, attempts to parry any injury to the deed of assignment with the argument that our statute prescribes the duty of the assignee, who becomes and is an officer of the court, and must carry out the assignment as required by the statute without regard to the provisions of the instrument; and in substance, when an assignment is once made, however fraudulent or void upon its face, it is cured by the operation of the assignment laws.  Not so.  The court has no right to make a new deed of assignment, any more than a new contract between parties.  The fact that the assignment may be construed in opposition to the requirements of the general assignment laws, is an additional argument of its invalidity. If an assignment is made for the benefit of creditors, and thereby an insolvent's property is unconditionally and unreservedly transferred to an assignee, with a general authority to the latter, to receive, hold and dispose of it, for the equal benefit of all the creditors, the statutes of the state provide and regulate the assignee's conduct, etc.  But when an assignment is void, owing to its fraudulent conditions, or from a purpose of hindering, delaying, and defrauding creditors,

the law gives it no aid or assistance; and when properly attacked by a creditor, it has no power or force, either within itself, or from the authority of the assignment act.

These views render it unnecessary to consider the other objections made to the assignment.

The judgment of the district court will be reversed.

All the Justices concurring.