## C. H. DORR, PLAINTIFF IN ERROR, VS. SCHMIDT & ZEIGLER, DEFENDANTS IN ERROR.

1. The validity of an assignment for the benefit of creditors, may be tested in garnishment proceedings against the assignee.

2. The act of 1880 (Chapter 3891), regulating assignments for the benefit of creditors did not violate any constitutional provision.

3. A clause excepting such property as is exempt by law from forced sale in a deed of assignment of all the assignor's property for the benefit of his creditors, does not render the instrument void for want of sufficient identification and description of the property as being an attempt to convey an uncertain and undefined part only of a larger quantity or mass of property, nor does such clause *per se* make the assignment fraudulent as to creditors.

4. A deed of assignment purported to convey all of the assignor's property, real, personal and mixed, except such as was exempt by law from forced sale, and at the time of its execution the assignor delivered all his property, being personal, to the assignee, and then declared his intention to claim his exemp, tions out of the property assigned; subsequently the assignee-deeming it to be to the best interest of all concerned, sold all of the assigned property, and paid the assignor a sum of money equal to the value of property exempt to him by law: *Held*, That the deed of assignment itself not providing for the payment of the exemptions out of the proceeds of the assigned property, and no fraud or collusion as to the execution of the instrument being shown, the subsequent allowance of the exemptions out of the sale of the assigned property, did not render the deed of assignment fraudulent as to creditors. Whether the assignor was entitled to the money under the circumstances, or that the assignee should account to the creditors for the same, is not decided, as the question is not involved in this case.

5. A provision in a deed of assignment conveying property to an assignee, that he take and hold the property, other than such as is exempt by law from forced sale, and dispose of the same so as to realize therefrom the greatest amount of money possible, and to the best interest of all concerned, does not avoid the

deed on the ground that it vests in the assignee discretionary power to sell the property on a credit.

6. The generality of the description of personal property in a vol untary deed of assignment for the benefit of creditors will be-sufficient when, by the aid of parol evidence, a definite application of the terms may be made.

7. By the terms of a voluntary deed of assignment the assignor assigned, set over, granted, bargained and sold to an assignee named all the property, real, personal and mixed, of the assignor, except such as was exempt by law from forced sale, and at the time of the execution and delivery of the deed all of the assignor's property, being personal, was delivered into the possession of the assignee: *Held,* That the deed of assignment was not void on account of an insufficient description of the property assigned.

Writ of Error to the Circuit Court for Escambia county.

The facts in the case are stated in the opinion.

*John C. Avery* and *John Eagan,* for Plaintiff in Error.

*Blount & Blount,* for Defendant in Error.

MABRY, C. J.:

There is involved in this case the validity of an assignment for the benefit of creditors, made under the original act of 1889, Chapter 3891 laws of Florida. In December, 1891, Schmidt & Zeigler commenced suit against R. M. Avery and had garnishment process served on C. H. Dorr, with the view of reaching money or property in his hands belonging to Avery. Judgment was entered in favor of Schmidt & Zeigler against Avery for $574.97, and the garnishee, Dorr, answered that he did not owe Avery anything, nor did he have possession of any money or other property of any kind

belonging to him. The answer further alleged that on the 5th day of September, 1891, R. M. Avery made to him, Dorr, a general assignment in writing of all the former's property, real, personal and mixed, except such as was exempt by law from forced sale, for the benefit of his creditors, under and in strict compliance with Chapter 3891 laws of this State; that on said date garnishee as assignee under said assignment executed and filed bond as required by law, and the assignor filed the oath required, to the effect that he had assigned and turned over all his property of every kind not exempt from forced sale, and also on the same day delivered possession of his said property to said assignee, who took possession and control of the assigned property, and caused an inventory thereof to be made, together with a full statement of assignor's liabilities, and which inventory and statement were filed as a part of the proceedings of the assignment in the clerk's office of Escambia county, on the 11th day of September, 1891. That since the date of the assignment the garnishee, as assignee under said assignment, had sold said assigned property for money to the best advantage of all concerned, and he then held the same for the benefit of Avery's creditor's except the sum of $749.15, already paid to them upon their demands for *pro rata* amounts, and that about the sum of $1028 was in his hands for the benefit of all creditors who had not received their *pro rata* amounts. Issue was joined upon this answer, and being tried by the court without a jury by consent, judgment was rendered in favor of plaintiffs against the garnishee. The latter sued out the writ of error.

The written assignment introduced in evidence reads as follows, *viz:* "Know all men by these presents,

that I, R. M. Avery, do hereby assign and set over, grant, bargain and sell unto C. H. Dorr, for the uses and purposes hereinafter expressed all of my property, real, personal and mixed, except such as is exempt by law from forced sale, to have and to hold the above described property unto the said C. H. Dorr and his successors and assigns forever.· The property so assigned is of the estimated value of seven thousand ($7000) dollars. This conveyance is made to the said C. H. Dorr in trust, to take and hold the said property other than such as is exempt by law from levy and forced sale, and dispose thereof so as to realize the greatest amount of money thereout possible, and to the best interest of all concerned, and pay to my creditors the amounts I owe them, in equal proportion according to their several demands, and to do and perform all other acts and things as may be requisite and necessary in the lawful discharge of his duties as assignee under the provisions of 'an act regulating assignments for the benefit of creditors,' approved May 31st, 1889. In witness whereof," etc. The written assignment, the oath of the assignor and the bond of the assignee were filed for record on the 6th of September, 1891, the date of the execution of the assignment. No question is raised as to the sufficiency of the affidavit and bond, and they need not be recited.

On the 11th of September following the date of the assignment the assignee made out and filed with the Clerk of the·Circuit Court an inventory of the property delivered to him under the assignment, and a statement of the claims due to and from the assignor. From the garnishee, who was the only witness examined in the case, it appears that the property assigned was all personal, consisting principally of a stock of

groceries and book accounts; that garnishee as assignee named in the assignment took possession of the property assigned to him on the date of the assignment, the same having been pointed out to him by the assignor. Possession of all the property then pointed out was taken, and witness says he thinks it was all Avery had, as he could learn of no other property belonging to him. The stock and book accounts were sold for cash at private sale by the assignee at fifty cents of cost value, and out of the proceeds the assignor, R. M. Avery, was paid $1000 as his exemptions, he being the head of a family residing in this State and claiming it. In testifying as to this payment the garnishee says: "I think it was better for all concerned to have paid his exemptions in this way, than to have had him select it out of the stock for if he had selected $1000 worth out of the grocery stock, the balance could not have been disposed of to as good advantage. It was my understanding at the time I took possession of the property under the assignment, that R. M. Avery intended to claim his exemptions to the extent of $1000 out of the stock property."

Some of the questions presented in this case have been passed upon in former decisions of this court, and reference will first be made to them. For plaintiff in error it is contended that a proceeding by garnishment is not the proper way to test the validity of an assignment for the benefit of creditors, but we have held that it is, and that if, upon the trial of the issue in such a proceeding, the assignment is found to be fraudulent, ineffectual or void, the garnishing creditor should recover against the assignee garnished the amount found in his hands under the void assignment at the time of the service of the garnishment process to the extent of

the creditor's claim.   Williams vs. Crocker, 36 Fla. 61, 18 South. Rep. 52.   Of course, if the assignment be valid and the assignee's title undisputed, he holds by title paramount to that of the assignor, and the purpose of the assignment can not be defeated by garnishment proceedings instituted by a creditor of the assignor.

The constitutionality of the assignment act (Chapter 3891) is attacked by defendants in error.   We held the law to be constitutional in the case of Rosenheim vs. Morrow, 37 Fla. 183, 20 South. Rep. 243.   The title of the act is sufficiently comprehensive to include all of the provisions.   Further discussion as to this contention is deemed unnecessary.

The clause in the assignment as to the exempt property is made the basis of objections to the validity of the instrument.   As the exempt property is not described, or in any way identified in the assignment, it is claimed that if the assignor intended to take his exemptions out of the property assigned, the contract was executory until the selection was made out of the property, and as none was ever made, the garnishment process should take the money in the hands of the assignee.   Among the authorities cited are the cases of Sugg vs. Tillman, 2 Swan (32 Tenn.), 208, and Myers vs. Conway & Co., 90 Ala. 109, 7 South. Rep. 639, and it must be conceded that they, as well as the case of Block Bros. vs. Maas & Block, 65 Ala. 211, hold that an assignment with such an exception as to exempt property as the one before us would be void on the ground, as claimed, of a want of sufficient identification and description of the property attempted to be conveyed.   It was said to be an attempt to convey an uncertain and undefined part only of a larger quantity

or mass of property, and, therefore, inoperative and void. The Alabama cases referred to have been expressly overruled by the later decision in Frank vs. Myers, 97 Ala. 437, 11 South. Rep. 832, and the Tennessee case has also, it seems, been repudiated in that State, but whether entirely so or not is immaterial, as it is not sound, in our judgment. As clearly pointed out in Frank vs. Myers, *supra*, if there is any uncertainty in the assignment on account of the clause mentioned, it is in the description and identity of the property attempted to be excepted from the grant, and not in the grant itself. Our decision in Parker vs. Cleaveland, 37 Fla. 39, 19 South. Rep. 344, is in harmony with this view. The exception clause as to the exempt property in the assignment there involved was similar to the one in the assignment now before us, and we held that it did not *ipso facto* make the assignment void for uncertainty, or fraudulent as against creditors, and did not authorize an attachment against the assignee on account of its being in the deed of assignment. We did not then decide what effect such an exception clause would have as to the exempt property. Clearly, under our own decision, as well as the decided weight of authority, a clause in an assignment excepting from the grant therein the property which is exempt by law to the assignor, will not *per se* render the assignment fraudulent or void.

It is further insisted that the payment of $1,000 by the assignee to the assignor out of the proceeds of the assigned property, as the latter's exemptions, avoids the assignment. This objection is based upon the view, as we understand it, that having turned over all of his property under the assignment to the assignee, the assignor thereby waived his right of exemption,

and that if he did not do so, such right could not extend to the selection of $1,000 out of the money arising from the sale of the assigned property. As the issue involved the validity of the assignment, and not the propriety of the assignee's conduct, or his liability to account for trust property that went into his hands, the objection goes further and claims that as the assignee knew when he accepted the trust that the assignor intended to claim his exemptions out of the property assigned, there was collusion between them to accomplish an illegal purpose to the detriment of the creditors. We do not think there is anything in this objection to avoid the assignment itself. Had the assignor incorporated therein a reservation of $1,000 as his exemptions out of the proceeds arising from the assignee's sale of the entire property, the assignment would probably be fraudulent upon its face. Such an assignment was condemned in the case of King vs. Ruble, 54 Ark. 418, 16 S. W. Rep. 7. The assignment before us contains no such reservation, and the payment of the $1,000 to the assignor was the act of the assignee subsequent to the execution of the instrument. True the assignee says it was his understanding when he took possession of the property that the assignor intended to claim his exemptions to the extent of $1,000 out of the stock property, and reasons are given for subsequently paying the money, rather than have him select his exemptions out of the stock. The assignment itself gave notice of a purpose on the part of the assignor to insist on his exemptions out of his property, but this did not alone render it fraudulent or void as to creditors, as they had no claim on the property of the assignor exempt by law from forced sale. This was our conclusion in Parker vs. Cleave-

land, *supra*, and the authorities sustaining it are ample. To execute an assignment of all the assignor's property with an exception as to such as is exempt by law, is not fraudulent or unlawful as to creditors; neither is it a fraud upon creditors for an assignor to turn over all his property under such an assignment, and at the same time express an intention to claim his exemptions out of it. The facts of this case, it may be said, show that the assignor not only expressed an intention to claim his exemptions out of the property turned over to the assignee, but the latter so understood it, and in recognition of such right paid money out of the proceeds of the sale of the property when no selection had been made out of the property itself. As the validity of the assignment, and not the subsequent conduct of the assignee is involved, it is only necessary to decide here whether it was fraudulent for an assignee to accept property under an assignment like the one before us with the understanding at the time that the assignor intended to claim his legal exemptions out of it, and we hold that it was not. The exemptions under our system are secured by the Constitution, and a party should not be deprived of them without his consent. An assignment, though voluntary under the statute, should not be construed to deprive one of a constitutional right by waiver, when it is clear that he did not intend to waive it, but claimed and insisted on the same in the deed of assignment itself. Frank vs. Myers, *supra*. As the purpose expressed and understood at the time of the execution of the assignment in question was simply to claim exemptions to which the assignor was entitled by law out of the property assigned, there was no fraud in law or fact in the execution of the instrument.

Whether the subsequent payment of $1,000, out of the property sold, to the assignor was proper, is not necessary to be determined here, as the assignee could not destroy the assignment itself by subsequently disbursing the trust funds in his hands in an improper way, if such was the case.

, It is further insisted that the assignment is void because it vests in the assignee a discretionary power to dispose of the assigned property on a credit. The provision in the assignment is "to take and hold the said property other than such as is exempt by law from levy and forced sale, and dispose thereof so as to realize the greatest amount of money thereout possible, and to the best interest of all concerned." We do not think a discretionary power to sell on a credit is here given to the assignee. Where a deed of assignment vests in an assignee an absolute discretion to sell the property on such terms and conditions as he deems best, it may be said that he would derive therefrom an independent discretion to act on his own judgment, and not such as the law gives him subject to the control of the courts. Such an assignment would be condemned by the New York cases of Brigham vs. Tillinghast, 13 N. Y. 215; Dunham vs. Waterman, 17 N. Y. 9, S. C. 72 Am. Dec. 406, and Schufeldt vs. Abernethy, 2 Duer, 533, cited by counsel for defendants in error. The Wisconsin case of Keep vs. Sanderson, 2 Wis. 42, S. C. 60 Am. Dec. 404, has been overruled. Cribben vs. Ellis, 69 Wis. 337, 34 N. W. Rep. 154. Bigelow says the New York rule has been followed by many courts, and rejected by not a few. 2 Bigelow on Frauds, 305. In New York, however, and elsewhere, if the deed of assignment does not authorize the assignee to sell on such terms and condi-

tions as he may deem best, or in other words, does not vest him with an absolute discretion to sell as he may think best, but only clothes him with such powers as the law gives under the control of the courts, the deed is not void. This distinction is clearly pointed out in the decisions in Jessup vs. Hulse, 21 N. Y. 168, and Robbins vs. Butcher, 104 N. Y. 575, 11 N. E. Rep. 272. The assignment in question does not confer discretionary power upon the assignee to sell on such terms and conditions as he may think best, but he must dispose of the property so as to realize the greatest amount of money, to the best interest of all concerned, which is his legal duty, and under this authority his acts are subject to judicial control.

The only remaining objection to the validity of the assignment to be considered is, that it is void because there is no sufficient description therein of the property intended to be assigned. The granting clause in the assignment is, "do hereby assign and set over, grant, bargain and sell unto C. H. Dorr, for the uses and purposes hereinafter expressed, all of my property, real, personal and mixed, except such as is exempt by law from forced sale, to have and to hold the above described property unto the said C. H. Dorr and his successors and assigns forever." In voluntary assignments a general grant of all the assignor's property for the benefit of his creditors has been sustained by many courts. It was held in State vs. Keeler, 49 Mo. 548, that the absolute owner of personal property has the right to make a voluntary assignment of the same, by any discription which, together with parol evidence, may ascertain the property conferred; and in Clark vs. Few, 62 Ala. 243, the ruling was that the generality of the description of the prop-

erty intended to be conveyed by the assignment for
the benefit of creditors, does not affect its validity,
when, by the aid of parol evidence, a definite appli-
cation of the terms may be made.   Burrill, sec. 134,
says:  "The description should be sufficiently explicit
to enable the assignee to take possession.  A mere
imperfection in the description will not, however, have
the effect of invalidating the instrument, unless where
there is a failure to comply with some express statute
provision; and a description in general terms has fre-
quently been held unobjectionable."   The assignment
act of 1889 makes no provisions as to schedules or
sworn statements, except in the semi-annual reports
of the assignee in the office of the Clerk of the Circuit
Court, nor is there any direction in terms as to the
description of the property to be assigned, further
than it shall be in writing.   It is contended by coun-
sel for defendants in error that the entire act taken
together should be so construed as to require a specific
description of the property in the assignment, so that
creditors may know what it is.   The provisions in the
statute pointed out as authorizing such a construction
are those requiring the assignor to make and have re-
corded in the clerk's office an oath that he has placed
or assigned; and the true intention of the assignment
was to place in the hands of the assignee all property
of every description except such as is exempt by law,
and imposing a penalty for false swearing; that the
deed of assignment and oath must be recorded in the
county or counties in which the property assigned is
situated; the bond of the assignee must be in double
the value of the property assigned; that notice of the
assignment must be published in the county wherein
the assigned property or a portion of it is situated,

and sixty days are given to resident, and four months to non-resident, creditors to prove claims; and that upon complying with the provisions of the law in good faith for the assignor is entitled to a full discharge. A strict compliance with the statute should be required, in our judgment, and we held in Williams vs. Crocker, *supra*, that the oath required of the assignor was mandatory, and a failure to make the same rendered the assignment void. It is much better that the property be so described in the assignment as that the assignee and the creditors may readily find it, and that the record of the papers and notice required to be given may be made in the proper county or counties from the description given, and there is much force in the contention that the provisions referred to contemplate that such description should be made in the assignment. We have, however, reached the conclusion that if the description of the property in the assignment is sufficient to pass the title under the general rules of law applicable to voluntary assignments, and the positive provisions of the statute have been complied with, and no fraud in fact as to the execution of the instrument is shown, it will be sufficient. In the present case the conveyance was of all the assignor's property except such as was exempt by law, and it is shown by the evidence that the assignor's property was personal. We must also conclude from the evidence that all of the property was delivered into the actual possession of the assignee when the assignment was executed, and that he retained exclusive possession of the same until it was sold. The assignor, within the time prescribed by the statute, made and filed his affidavit that he had placed or assigned, and the true intention of his assignment was to place in

the hands of his assignee, all of his property of every description, except such as was exempt by law from forced sale, and there is no impeachment of the affidavit, or question as to the delivery of all the property to the assignee under the assignment. In our judgment a delivery of the personal property under the deed as that intended to be conveyed was sufficient, and met all the requirements of the statute. Frank vs. Myers, *supra*.

The decision of the lower court was erroneous and must be reversed. Ordered accordingly.